SEA CONTAINERS LTD., Plaintiff,

v.

STENA AB, et al., Defendants.

STENA FINANCE B.V.,
Counterclaimant,

v.

SEA CONTAINERS LTD., et al.,
Counterclaim Defendants.

Civ. A. No. 89–0752 JGP.

United States District Court,
District of Columbia.

May 8, 1989.

**232**

Paul Friedman, Washington, D.C., for plaintiff.

Richard Brusca, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This matter is before the Court on counterclaimant Stena Finance B.V.'s ("Stena Finance") motion for a preliminary injunction. The Court heard arguments on the motion on May 3, 1989.

The case initially came before the Court on Stena Finance's motion for a temporary restraining order. The Court denied that motion. *See*, Order and Memorandum, filed April 11, 1989. The Court granted Stena Finance's request for expedited discovery and briefing schedule for a preliminary injunction. *See*, Order filed April 13, 1989. The parties introduced numerous documents, affidavits and depositions in support of their respective positions.

### I.

As set forth in the Sea Containers' complaint, the principal parties in this case are as follows: Sea Containers is a company organized and existing under the Companies (Incorporation by Registration) Act, 1970 of Bermuda. Its principal executive offices are located at Forty-one Cedar Avenue, P.O. Box HM 1179, Hamilton 5, Bermuda. Sea Containers is principally engaged in two main activities, both allied to ocean transportation: (i) marine container, containership, container crane and container chassis leasing and sales and (ii) ferry and port operations, primarily in the United Kingdom. As of October 31, 1988, Sea Containers had 11,780,330 shares of common stock outstanding including the shares owned by subsidiaries of Sea Containers (the "Outstanding Shares"). Those Outstanding Shares are listed on the New York, Pacific and London Stock Exchanges and are traded there and on other exchanges on an unlisted basis including the Amsterdam Stock Exchange, and are registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78*l*.

Stena Finance B.V. is a corporation organized and existing under the laws of the Netherlands. Its principal offices are located at World Trade Center, Tower B, Floor 3, Strawomslyaan 321, 1077 XX, Amsterdam. Stena Finance is principally engaged in international financial and investment management. All of the outstanding capital stock of Stena Finance is held by Finance Parent.

On March 22, 1989, Sea Containers filed this action against Stena Finance [1] alleging that Stena Finance's Schedule 13D was false and misleading and omitted material facts with respect to Stena Finance's intentions and plans. On March 29, Stena Finance filed its answer to the complaint and asserted counterclaims against Sea Containers, Mr. Sherwood and certain of Sea Containers' subsidiaries, alleging various violations of Bermuda law and U.S. securities law.[2] Stena Finance moved to amend and supplement its counterclaim, adding, among other things, a claim that two of Sea Containers' subsidiaries, Sea House and Marine Container, were engaged in an illegal tender offer.

Stena Finance seeks a preliminary injunction requiring Sea Containers to amend their Schedule 13D, and enjoining them from acquiring or attempting to acquire or otherwise effecting any transaction in any

---

1. The named defendants in Sea Containers' complaint include Stena AB, AB Stena Finans, Stena Finance B.V., Dan Sten Olsson and Sten Allan Olsson.

2. Stena Finance's counterclaim is against Sea Containers and some of its subsidiaries; hereinafter reference to Sea Containers includes all counterclaim defendants.

shares of Sea Containers stock until 30 days after Sea Containers' amended filing. With respect to the relief it seeks, Stena Finance states:

> Stena's initial Temporary Restraining Order application was premised on a claim that Sea Containers was conducting an illegal tender offer which was facilitated by the coercive impact of defendants' false Schedule 13D filing.

> The discovery thus far does not warrant Stena to seek now a preliminary injunction premised on the tender offer claim. The harm which Stena sought to avert arising from the coercive nature of the Schedule 13D, can be alleviated now by awarding relief requiring that a truthful Schedule 13D be filed.

Stena Finance B.V.'s Memorandum In Support of its Motion for a Preliminary Injunction ("Stena Finance's Memorandum) at 3–4, fn.

## II.

In order to be entitled to injunctive relief, a movant must demonstrate (1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief or, at least, that the granting of injunctive relief is not adverse to the public interest. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). In addition, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Id.* In suits alleging violations of the disclosure requirements of section 13(d), an injunction may not issue in the absence of a showing of irreparable injury. *Financial General Bankshares, Inc. v. Lance*, Fed. Sec.L.Rep. (CCH) par. 96,403 at 93,424, 1978 WL 1082 (D.D.C.1978), citing *Rondeau v. Mosinee Paper Co.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975).

Section 13(d) requires that "any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 781 of this title, ... is directly or indirectly the beneficial owner of more than 5 percent of such class shall, within ten days after acquisition", file certain information with the Commission. *See*, 15 U.S.C. § 78m(d)(1). The 13(d) statement must set forth: (a) the background of such person, (b) the source of the funds used for the acquisition, (c) the purpose of the acquisition, (d) the number of shares owned, and (e) any relevant contracts, arrangements or understandings. *Id.* The purpose of 13(d) is to "alert the market place to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *GAF Corp. v. Milstein*, 453 F. 709, 717 (2d. Cir.1971), *SEC v. Savoy Industries*, 587 F.2d 1149, 1167 (D.C.Cir.1978).

The Court's role is to assure that public shareholders who are confronted by a cash tender offer for their stock, or when there are shifts in corporate control, will not be required to respond without adequate information regarding the qualifications and intentions of the offering party. *See, Rondeau v. Mosinee Paper Corporation, supra.* The Court recognizes that in a contest for corporate control, each side continues to develop means to gain an advantage. The Second Circuit noted:

> Contests for corporate control have become ever more frequent phenomena on the American business scene. Waged with the intensity of military campaigns and the weaponry of seemingly bottomless bankrolls, these battles determine the destinies of large and small corporations alike. Elaborate strategies and ingenious tactics have been developed both to facilitate takeover attempts and to defend against them. Skirmishes are fought in company boardrooms, in shareholders' meetings, and, with increasing regularity, in the courts.

*Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 258 (1984).

## III.

The parties in this case invite the Court to become a referee in their fight for corpo-

rate control; however, the Court is obliged to limit its role to whether there has been proper disclosure pursuant to § 13(d). The issues raised in the motion for preliminary injunction present the Court with the following questions: (1) whether Sea Containers provided adequate disclosure regarding whether under Bermuda law its subsidiaries can legally purchase shares of their parent and, if so, whether such shares remain outstanding with full voting rights, (2) whether James Sherwood, Sea Containers House Ltd., Marine Container Insurance Co. Ltd. and Strider 8 Ltd. formed a group pursuant to § 13(d)(3), (3) whether Mr. Sherwood and Sea Containers' subsidiaries provided adequate disclosure regarding their purpose for buying Sea Containers' stocks, and (4) whether Sea Containers, pursuant to Bermuda law, provided unlawful financial assistance to its subsidiaries in the purchase of Sea Containers' stock.

## A.

■ Stena Finance contends that Sea Containers' Schedule 13D and amendments thereto are false and misleading for failing to accurately disclose the number of outstanding shares beneficially owned and able to be voted by the subsidiaries. Stena Finance's Memorandum at 36–42. Stena Finance states:

If the shares in the subsidiaries' hands are upheld as outstanding and able to be voted under Bermuda law, then the subsidiaries, together with management, will beneficially own a 32% block of the outstanding stock—a substantial "control" block which could impede any takeover attempt. If, however, the subsidiaries' 20% block of shares is held to be cancelled as Stena Finance contends it should be, then Sea Containers management will own only 10% of the outstanding stock and the subsidiaries will own nothing.

*Id.* at 40. The parties have submitted affidavits of their experts regarding Bermuda law; which present conflicting views.

The parties agree that "what Sea Containers has no power to do as principal, it has no power to do whether it acts directly as principal or indirectly through the medium of an agent." Stena Finance's Reply Memorandum at 1, Lightman's Reply Declaration par. 7. Stena Finance's expert, Thomas Curry, submits:

If a Bermudian Court were to find, as it has been alleged, that as part of the scheme pleaded in Stena's Counterclaims Sea Containers Limited directed and caused its subsidiaries to purchase Sea Containers shares in order to circumvent Section 42(A)(6) of the Bermuda Companies Amendment Act 1982 the Court would see through the transaction, treat it as a purchase of shares by Sea Containers Limited and enter judgment cancelling the shares acquired by the subsidiaries.

Curry's Declaration at par. 5. The Bermuda Companies Act holds with respect to a parent company's purchase of its own shares that:

Shares purchased under this section shall be treated as cancelled and the amount of the company's issued capital shall be diminished by the nominal value of those shares accordingly; but the purchase of shares under this section shall not be taken as reducing the amount of the company's authorized share capital.

§ 42A(6) of the Bermuda Companies Act, 1981 (as amended). In order to accept Stena Finance's view that Sea Containers' disclosure was improper, the Court must first find that the subsidiaries acted as an agent of Sea Containers or that the subsidiaries cannot purchase their parent's stock. Sea Containers' expert, Gavin Lightman, contends that a holding company and its subsidiary are separate legal entities and the subsidiary is free to purchase stock from the parent company. Lightman's Reply Declaration at par. 3, 12.

Stena Finance's expert has not established, pursuant to Bermuda law, that a subsidiary cannot purchase stock from the parent company. Further, Stena Finance has failed to establish that Sea Containers' subsidiaries were acting as an agent of the parent company. Upon review of the deposition of James Sherwood, Sea Containers' president, the documents relied on during

the deposition, and the entire record, it is clear that Mr. Sherwood encouraged the company's subsidiaries to purchase the parent's stock; however, the subsidiaries' boards have their own duty of care and loyalty and were free to decline the recommendation. Though the Court may question Sea Containers' control over the subsidiaries, the Court finds that Stena Finance has failed to establish that Sea Containers' subsidiaries were acting as an agent of the parent company.

Further, upon review of the experts' affidavits and the Bermuda law, it appears that Sea Containers has not misstated Bermuda law. Notwithstanding this Court's interpretation of Bermuda law, Sea Containers' Schedule 13D filings includes the opposing view represented by Stena Finance. Sea Containers' Memorandum In Support of Motion to Dismiss, Exhibit D and E. The Court finds in view of the purpose of 13D to provide adequate disclosure to the public, Sea Containers has complied with the securities law with respect to the subsidiaries' ability to vote their stock.

### B.

Stena Finance seeks to have the Court require Sea Containers to amend its 13D filing to indicate that Mr. Sherwood, Sea Containers House Ltd., Marine Container Insurance Co. Ltd. and Strider 8 Ltd. formed a group pursuant to § 13(d)(3). The purpose of this section is to prevent easy avoidance of section 13(d)'s disclosure requirements by a group of investors acting together in their acquisition or holding of securities. *See, Financial General Bankshares, Inc. v. Lance, supra,* citing H. Rep. No. 1711, 90th Cong., 2d Sess. 8–9, reprinted in 1968 U.S.Code Cong. & Ad. News 2811, 2818. The Court finds on the present record that Sea Containers' joint filings is in accordance with 13(d)(1) and that 13(d)(3) is not triggered in this case. There is adequate disclosure to the public regarding the recent purchase of Sea Containers' stock.

### C.

Stena Finance further argues that the Schedule 13D and its amendments af-

firmatively misrepresent the purpose behind the subsidiaries' purchase of Sea Containers shares. Stena Finance's Memorandum at 42–46. Stena Finance argues that "the counterclaim defendants have formed a 'group' and have conducted their stock buy-back scheme to prevent any third party from acquiring control of the company." *Id.* at 42. The Court does recognize that the flurry of activity that occurred after March 13, 1989, when Stena Finance filed its 13D, does suggest that Sea Containers has implemented takeover defenses. As noted earlier, the Court is only concerned with the adequate information available to the public shareholders pursuant to securities law. Stena Finance's counterclaim alleging that Sea Containers has implemented illegal takeover defenses is available to the public. *See,* Sea Containers' Memorandum In Support of Motion to Dismiss, Exhibit D and E. The Court finds that Sea Containers' statement of the purpose of the purchase of shares; with the accompanying exhibits to the 13D filings, conforms with the intent of securities disclosure law.

### D.

Lastly, Stena Finance argues that the schedule 13D and its amendments contain false and misleading statements regarding the source of funds for the subsidiaries' stock purchases. Stena Finance's Memorandum at 47–49. The Court finds that Stena Finance has failed to establish that the Schedule 13D is false and misleading. Sea Containers submits that prior to the purchase it repaid demand obligations to Sea Containers House and Marine Container Insurance; the repayment provided some of the funds for the purchase. Upon review of the balance sheets of Sea Containers House and Marine Container Insurance, the Court notes that there are amounts due listed. *See,* Paul Friedman's Amended Declaration, Exhibit 16 and 17. Based on the record available to the Court, the Court finds that Stena Finance has failed to establish that the Schedule 13D is false and misleading.

## IV.

In a request for a preliminary injunction, the burden is on the moving party to demonstrate that it has a strong likelihood of success on the merits. The Court finds that Stena Finance has not met its burden that it has a strong likelihood of success on the merits. If the Court were to grant a preliminary injunction, it would have a substantial impact on the corporate market. In a contest for corporate control, the Court must limit its role. Though, upon review of the record, the Court may question the actions taken by both parties in the contest for control of the company, the Court finds that Stena Finance has not made out a case for a preliminary injunction.

For the reasons discussed above, the Court concludes that Stena Finance's motion for a preliminary injunction should be denied.